# EXHIBIT A

EXHIBIT A





**IMDb**

Find Movies, TV shows, Celebrities and more...    All    Q

Movies ▾ | TV ▾ | News ▾ | Showtimes ▾ | Community ▾ | IMDbPro ▾

## "The Company You Keep" New York Premiere

15 photos



15 photos

# EXHIBIT B

# EXHIBIT B



# EXHIBIT C



HOME PAGE | TODAY'S PAPER | VIDEO | MOST POPULAR | TIMES TOPICS

EXHIBIT C

Subscribe: Digital / Home Delivery | Log In | Register Now | Help

The New York Times

SundayReview | The Opinion Pages

Search All NYTimes.com Go

WORLD U.S. N.Y. / REGION BUSINESS TECHNOLOGY SCIENCE HEALTH SPORTS OPINION | ARTS STYLE TRAVEL JOBS REAL ESTATE AUTOS

OTTAWA. WHERE THE USUAL COMES OUT TO PLAY.
Taste of Canada Package and Special Offers. Let's Go
OTTAWA
CANADA'S CAPITAL

Advertise on NYTimes.com

EDITORIAL | STATE OF PLAY

# The Perpetual War: Pirates and Creators

By EDUARDO PORTER
Published: February 4, 2012

RECOMMEND
TWITTER
LINKEDIN
SIGN IN TO E-MAIL
PRINT
REPRINTS
SHARE
THE EAST
WATCH TRAILER

From book publishers like Macmillan to Hollywood studios like Disney, producers of content are deeply frustrated by the defeat of their efforts to curb online piracy in Congress last month. The bill they favored was flawed, and could have inhibited expression on the Web. But their concern is spot on: the rampant piracy enabled by the Internet undermines the very economics of creative industries.

Multimedia

Graphic
File-Sharing Soars

Graphic
Chipping Away at Two Industries

Related in Opinion

Room for Debate: What's the Best Way to Protect Against Online Piracy? (January 18, 2012)

Online piracy is growing by leaps and bounds, as the first chart shows. The use of peer-to-peer and cyberlocker sites, most of it for illegal sharing, amounts to over one-fourth of all Internet traffic, according to Cisco Systems' Visual Networking Index. And while that fraction is expected to shrink as legal services like Internet video expand, file-sharing is still expected to grow about 23 percent annually, on average, until 2015. The Recording Industry Association of America says that four out of five digital music downloads are illegal.

Piracy's effects on the economy as a whole are hard to measure. Studies used by the supporters of the defeated piracy legislation have tended to exaggerate piracy's economic costs and threat to jobs. For example, they often omit the fact that money not spent on music or movies is likely to be spent on something else. Nonetheless, piracy does hurt the industries that rely on copyright to protect their creations.

Consider the record labels' plunging sales since the music-sharing service Napster made large-scale piracy easy a decade ago. Album sales, including digital singles added up into album equivalents, fell from 755 million in 1999 to 458 million last year, according to Nielsen SoundScan. The top album in 1999, "Millennium" by the Backstreet Boys, sold 9.4 million copies. The top 2011 album, Adele's "21," sold 5.8 million.

Hollywood was hit by piracy somewhat later because movie files are bigger and require more Internet bandwidth. But home entertainment sales — a huge chunk of movie revenues — fell every year from 2004 to 2010. While box-office revenues have benefited from rising ticket prices, movie attendance has been steadily declining. The Oscar-winning "Hurt Locker," for instance, had a worldwide box office of only $49 million but was downloaded illegally seven million times, according to TorrentFreak, a Web site about file-sharing.

Publishers embraced e-books only a few years ago. In 2010, 1.5 to 3 million people were looking for free pirated copies of books every day, according to an analysis of global Internet searches by Attributor, a Web monitoring company. Of course, not every pirated download displaces the sale of a book, album or movie. But when it comes to music, most economic studies have concluded that piracy accounts for the vast majority or even entirety of the sales decline.

Many Internet enthusiasts say that this change isn't unhealthy, and that the Web makes more ventures possible. They point out that while piracy may be cutting the pay of record label executives, it doesn't seem to have stopped musicians from making new music. According to Nielsen, 75,300 albums were released in 2010, 25 percent more than in 2005. But new releases that sold more than 1,000 copies fell to about 4,700 from 8,000 during that time. The wave of creation that is more hobby than profession has little to do with piracy, and would likely be unaffected by laws to curb illicit downloads.

But if professional musicians, movie directors and writers can't make money from their art, they will probably make less of it. Independent producers say piracy is already making it harder to raise money for small and mid-budget movies.

Stopping piracy is about protecting creativity — and the many occupations it supports (think pop band or sound mixer). If we value what creative industries produce as much as we say we do, Congress will have to find a way to protect it without limiting speech.

A version of this editorial appeared in print on February 5, 2012, on page SR10 of the New York edition with the headline: The Perpetual War: Pirates and Creators.

SIGN IN TO E-MAIL
PRINT
REPRINTS

Log in to see what your friends are sharing on nytimes.com. Privacy Policy | What's This?

What's Popular Now

Cyberthieves Looted A.T.M.'s of $45 Million in Just Hours

For Office Workers, Lunchtime Dance Parties

Advertise on NYTimes.com

LOFT
SHOP
NEW ARRIVALS

MOST E-MAILED | MOST VIEWED

1. WELL
The Scientific 7-Minute Workout
2. In Hours, Thieves Took $45 Million in A.T.M. Scheme
3. WELL
Owning a Dog Is Linked to Reduced Heart Risk
4. TOOL KIT
Outsmarting Smartphone Thieves
5. OP-ED CONTRIBUTOR
The Next Pandemic: Not If, but When
6. Citrus Disease With No Cure Is Ravaging Florida Groves
7. MOVIE REVIEW | 'THE GREAT GATSBY'
Shimmying Off the Literary Mantle
8. PAUL KRUGMAN
Bernanke, Blower of Bubbles?
9. In Its Efforts to Integrate Roma, Slovakia Recalls U.S. Struggles
10. Carbon Dioxide Level Passes Long-Feared Milestone

Go to Complete List » Show My Recommendations

One perspective on the best places to retire
ALSO IN BUSINESS »
- Why I'm (sort of) ignoring Mother's Day
- A call to refinance private student loans
nytimes.com BUSINESS

THE NEW YORK TIMES STYLE MAGAZINE
T
Summer Travel Issue >

Ads by Google what's this?
Eve's Addiction Jewelry

Guaranteed Mother's Day Delivery.
Limited Offer - Save 20% Today!
www.EvesAddiction.com/Gifts

Try unlimited access to NYTimes.com for just 99¢. SEE OPTIONS »

Get Free E-mail Alerts on These Topics

- Copyrights and Copyright Violations
- Audio Recordings and Downloads
- Movies
- Book Trade and Publishing

Ads by Google                                        What's this?

Marketing for Lawyers
Affordable AdWords Management, SEO
and Web Design. No Cost Consult!
www.LegalPPC.com

INSIDE NYTIMES.COM

| TRAVEL » | DANCE » | OPINION » | THEATER » | OPINION » | MAGAZINE » |

**Taking Note: The Latest G.O.P. Temper Tantrum**
Republican senators boycotted the vote for the president's E.P.A. nominee.

36 Hours in Las Vegas | New York City Ballet Season Gala | 'On Your Toes,' With Christine Baranski | Letters: The Health Law and Its Incentives | How Does Shonda Rhimes Keep Making Hits?

Home | World | U.S. | N.Y. / Region | Business | Technology | Science | Health | Sports | Opinion | Arts | Style | Travel | Jobs | Real Estate | Autos | Site Map

© 2013 The New York Times Company | Privacy | Your Ad Choices | Terms of Service | Terms of Sale | Corrections | RSS | Help | Contact Us | Work for Us | Advertise

MORE IN OPINION (1 OF 23 ARTICLES)
**Op-Ed Contributor: The Next Pandemic: Not If, but When**
Read More »

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TCYK, LLC, | ) |
| | ) Case No.: 13-cv-3833 |
| Plaintiff, | ) |
| | ) Judge Robert W. Gettleman |
| v. | ) |
| | ) Magistrate Judge Susan E. Cox |
| DOES 1-112, | ) |
| | ) |
| Defendants. | ) |

### DECLARATION OF DARREN M. GRIFFIN IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

1.    I, Darren M. Griffin, make this declaration based on my personal knowledge. If called upon to do so, I will testify that the facts stated herein are true and correct.

2.    I have been retained by Crystal Bay Corporation ("CBC"), a corporation of South Dakota, as a software consultant in its technical department. CBC provides forensic investigation services to copyright owners.

3.    The forensic software used by CBC routinely collects, identifies and records the Internet Protocol ("IP") addresses in use by those individuals who employ the BitTorrent protocol to share, copy, reproduce and distribute copyrighted works.

4.    An IP address is a unique numerical identifier that is automatically assigned to an internet subscriber by the subscriber's Internet Service Provider ("ISP"). Using logs kept in the ordinary course of business, ISPs maintain records of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and Media Access Control number of a user/subscriber.

13-cv-3833

5.     Only the ISP that has assigned a particular IP address for use by a subscriber can correlate that IP address to a specific subscriber. From time to time, a subscriber of internet services may be assigned different IP addresses by their ISP. Thus, to correlate a subscriber to an IP address, the ISP also needs to know when the IP address was used. Unfortunately, many ISPs only retain the information necessary to correlate an IP address to a particular subscriber for a very limited period of time.

6.     Plaintiff retained CBC to identify the IP addresses of those BitTorrent users who were copying and distributing Plaintiff's copyrighted movie as identified in Exhibit A (the "Work"). CBC directed me to review, analyze and attest to the results of the investigation.

7.     During the performance of my duties as detailed below, I used forensic software provided by CBC to scan peer-to-peer networks for the presence of infringing transactions.

8.     After reviewing the evidence logs, I isolated the transactions and the IP addresses of the users responsible for copying and distributing the Work.

9.     Through each of the transactions, the computers using the IP addresses identified in Exhibit A transmitted a copy or a part of a copy of a digital media file identified by the hash value set forth in Exhibit A. The IP addresses, hash values, dates and times contained in Exhibit A correctly reflect what is contained in the evidence logs. The subscribers using the IP addresses set forth in Exhibit A were all part of a "swarm" of users who were reproducing, distributing, displaying or performing the copyrighted work identified in Exhibit A.

10.     Moreover, the users were sharing the identical copy of the Work. A digital copy of an audiovisual work can be uniquely identified by a unique, coded, string of characters called a "hash checksum." The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as U.S. Secure Hash Algorithm 1 or "SHA-1", which was developed by the National Security Agency and published as a U.S. government standard. Using

2

13-cv-3833

the hash tag identified in Exhibit A, I confirmed that the users identified as Doe Defendants in Exhibit B to the complaint reproduced and distributed the same copy of the Work.

11.     The CBC software analyzed each BitTorrent "piece" distributed by each IP address listed in Exhibit A and verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital motion picture.

12.     The software uses a geolocation functionality to confirm that all IP addresses of the users set forth in Exhibit A were located in Illinois and, based on information and belief, those users were specifically located in the Northern District of Illinois. Although an IP address alone does not reveal the name or contact information of the subscriber, it does reveal the location of the Internet line used for the transaction. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. These Registries assign blocks of IP addresses to ISPs by geographic region. In the United States, these blocks are assigned and tracked by the American Registry of Internet Numbers. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly available and searchable format. The geographic location of an IP address can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial databases by ISPs.

13.     As set forth in Exhibit A, I have confirmed not only that the users distributed the files in Illinois, but also the specific location (city/town) where the distribution took place.

14.     The targeted dates of the swarm in this matter cover a 3 ½ week period from April 22, 2013 to May 17, 2013.

15.     Torrent swarms can survive over extended periods of time (months or years) and provide users with exactly the same file comprising exactly the same pieces. The term "piece" is a term of art identifying a portion of a particular file. Based on information and belief, torrent swarms for popular files have been known to be available for over 6 years. The initial seeder (of a

3

parent file) uploads the content and then promotes the torrent file through online forums or websites. Users then have access to the torrent file over the same forums or websites and can join a link to the torrent swarm. Users receive the pieces of the initial seeder and provide those pieces to other users. The transfer occurs piece-by-piece so that the initial pieces from the seeder get passed from one user to the next user.

16.    There is no requirement to join an active swarm at a specific date and time. However, a torrent swarm might become smaller after months or years which slows down the process of file sharing activity but still renders the file fully available. A primary factor determining the size of a swarm is the popularity of the product that the file contains (movie, audio, TV series, etc.). For example, a recently released movie can lose popularity within weeks or months, whereas a famous album of a rock band might continue to be popular for several years.

17.    In terms of a common nexus of transactions and occurrences, the actions of an individual who downloaded a movie on April 22, 2013 are connected to the actions of an individual who downloaded the same movie (the same file) as part of the same swarm on May 17, 2013 in at least the following ways:

a.    A file with a particular hash value downloaded by an individual over that time period can ultimately be traced to a single parent file (i.e., the actions relate back to the same initial seed of the swarm);

b.    The swarm expands over that time period to include additional individuals based on uploading and downloading of pieces of the same file with the same hash value (i.e., the infringement by each individual further advances the series of infringements that began with the initial seed and continued through the actions of other infringers such that all individuals act under the same system); and

4

13-cv-3833

c.     An individual operating a computer with BitTorrent software left "on" over

that time period remains a participant of a swarm with respect to any file marked for participation in

that swarm (i.e., each individual shares pieces that originated from the same (identical) file, and

opens their computer to allow others to connect and receive those pieces).


### FURTHER DECLARANT SAYETH NOT.

### DECLARATION

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the

foregoing is true and correct.

Executed on this _12_ day of June, 2013.

By: _____
        Darren M. Griffin

5

# GRIFFIN EXHIBIT A

Case: 1:13-cv-03833 Document #: 1-1 Filed: 05/23/13 Page 5 of 8 PageID #:14

| No | IP Address | GUID | P2P Client | Hit Date UTC (MM/DD/YY) | FileName | FileHash | ISP | Region | City |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 67.173.43.63 | 20151412333030D204377C832DDCM1225145F9E2D5 | µTorrent 3.3.0 | 05/17/2013 01:24:32 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Rolling Meadows |
| 2 | 68.113.24.129 | 2D41342330303020543M46424761445347944532 | Vuze 5.0.0.0 | 05/14/2013 05:11:00 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Charter Communications | Illinois | Aurora |
| 3 | 75.118.175.197 | 2D42413331350302206D04374539765E2F67831A8 | -BA3330- | 05/12/2013 08:08:18 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | WideOpenWest | Illinois | Chicago |
| 4 | 71.57.6.151 | 4D37D3300303020A371SD05C0664PAC80D5C163 | BitTorrent 7.8.0 | 05/12/2013 05:10:39 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Downers Grove |
| 5 | 53.223.123.196 | 2D615413333030204E772E5955423A006E2D158A2C | µTorrent 3.3.0 | 05/09/2013 11:27:46 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 6 | 67.173.60.34 | 2D4154A42930320264817750424374304442F170 | Vuze 4.9.0.0 | 05/09/2013 03:19:37 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 7 | 24.13.166.57 | 2D61541333030204E7802EA363112D166A431A2D | µTorrent 3.3.0 | 05/09/2013 10:42:19 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Schaumburg |
| 8 | 67.176.201.155 | 2D4154A429303020534525375163064E9754D47 | Vuze 4.9.0.0 | 05/09/2013 04:17:03 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 9 | 67.176.166.197 | 4D37D9130303020514AD0CDCF3FD301682119403 | BitTorrent 7.5.0 | 05/07/2013 09:53:01 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Des Plaines |
| 10 | 67.173.66.123 | 2D4154A42331320D64755133577706A4A57604353 | Vuze 4.8.1.2 | 05/07/2013 12:14:22 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Buffalo Grove |
| 11 | 24.14.234.45 | 2D61541333030204E877396144DA2D1D415A44D99 | µTorrent 3.3.0 | 05/07/2013 12:47:03 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | VZ Park |
| 12 | 24.15.23.213 | 2D615413323131202D0460852D950F843822A5AD0CC | µTorrent 3.2.1 | 05/04/2013 03:06:24 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 13 | 50.141.242.146 | 2D4154A42830230207A7E2843A4E6647F8717A4163 | Vuze 4.8.0.0 | 05/03/2013 03:59:39 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Downers Grove |
| 14 | 67.165.134.196 | 2D615413333030204E77AAED55FCA78551A58A2A39 | µTorrent 3 3.0 | 05/04/2013 05:59:14 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 15 | 71.201.214.52 | 4D37D5323031201377E10182E0113 3726FF7108 | BitTorrent 7.8.0 | 05/04/2013 12:46.04 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Maywood |
| 16 | 50.131.161.139 | 2D615413313233202D4F6A0039644D93A2D0A21D35 7C | µTorrent 3.1.3 | 05/03/2013 03:14:40 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 17 | 67.167.4.244 | 2D615413334332D4482561644767E53D4A77A4541 | Vuze 4.3.0.4 | 05/03/2013 13:48:33 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 18 | 50.141.142.139 | 2D4154A419363023042587369473563D39434F7A61 | Vuze 4.9.0.0 | 05/02/2013 08:32:29 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Rockford |
| 19 | 50.227.203.103 | 4D37D5320302D3D06A78CA7046368EAF0F1D9C57 | BitTorrent 7.8.0 | 05/02/2013 07:16:03 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Palatine |
| 20 | 71.201.61.153 | 2D615413330302D4CF1ZA9CD2906ZDA76392674 | µTorrent 3.3.0 | 05/02/2013 07:18.28 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Roselle |
| 21 | 63.16.40.120 | 2D4154A42830320079143233466833336D7721153 | Vuze 4.8.0.0 | 05/02/2013 04:57:01 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Carol Stream |
| 22 | 24.14.2.209 | 2D4154A42950302037A314740404325694516057 | Vuze 4.9.0.0 | 05/02/2013 01:44:37 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Clarendon Hills |
| 23 | 98.206.106.75 | 4D37D3120303020249CF03000003123370.1A09 | BitTorrent 7.7.0 | 05/01/2013 07:43:27 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago Heights |
| 24 | 59.227.164.4 | 2D4154A42530234D5482S61644767E5D4A77A4541 | Vuze 4.3.0.4 | 05/01/2013 08:30:14 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Mundang |
| 25 | 67.167.321.23 | 2D615413330302D457577781002FU783765A347 | µTorrent 3.3.0 | 05/01/2013 07:09:50 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Saint Charles |
| 26 | 59.227.223.140 | 2D41SAA429712320041654F66662057965426SC053 | Vuze 4.8.1.3 | 03/01/2013 06:23:30 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Berwyn |
| 27 | 24.13.210.153 | 2D4154A42952302D7A57815443153766487443374 | Vuze 4.8.0.0 | 03/01/2013 02:27:13 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Mount Prospect |
| 28 | 75.18.125.167 | 2D4154A423030320456371507464C4744183C262163 | Vuze 4.8.0.0 | 03/01/2013 03:14:49 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 29 | 59.227.158.143 | 4D37D5402030201D57F7A4D063ZD64C3023160CS | BitTorrent 7.8.0 | 03/01/2013 12:59:53 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 30 | 67.175.10.29 | 2D6154133123D01556F92250068F31A092A5A1 | µTorrent 3.1.2 | 04/30/2013 12:50:19 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Channahon |
| 31 | 71.194.50.119 | 2D4154A4373032D04320734625644466704243A4 | Vuze 4.7.0.2 | 04/16/2013 04:53:01 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | McHenry |
| 32 | 50.129.13.223 | 4D37D3402D17120204B4C029007CF4E6287360F | BitTorrent 7.6.1 | 04/12/2013 08:14:40 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Chicago |
| 33 | 68.40.216.51 | 4D37D3130230201D08716344612D12A853A134649 | BitTorrent 7.8.0 | 04/11/2013 04:03:17 PM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Schaumburg |
| 34 | 98.213.194.3 | 2D61542332153130204770753560352746137716C | Transmission 2.61 | 04/10/2013 08:00:04 AM | The Company You Keep (2012) | SHA1: 601FD6FEA3A564CB244E3F3025453055AA6E5D1 | Comcast Cable | Illinois | Rockford |

| # | IP Address | Hash | Client | Date/Time | Title | SHA1 | ISP | State | City |
|---|---|---|---|---|---|---|---|---|---|
| 35 | 67.176.212.230 | 20155413323302204671... | uTorrent 3.3.0 | 04/30/2013 07:43:12 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 36 | 24.14.156.152 | 20155413323302204671... | uTorrent 3.3.0 | 04/30/2013 07:18:50 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Elgin |
| 37 | 50.141.156.61 | 20155413323302204671... | uTorrent 2.2.0 | 04/30/2013 07:14:14 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Darien |
| 38 | 71.201.194.32 | 20155413323302204671... | uTorrent 2.2.0 | 04/30/2013 02:13:48 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Rockford |
| 39 | 64.53.219.19 | 20155413323302204671... | uTorrent 3.2.3 | 04/29/2013 01:49:42 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | WideOpenWest | Illinois | Schaumburg |
| 40 | 24.13.237.13 | 20155413323302204671... | uTorrent 3.3.0 (Beta) | 04/29/2013 06:26:43 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Highland Park |
| 41 | 50.151.192.3 | 20155413323302204671... | uTorrent Mac 1.8.6 | 04/29/2013 04:05:43 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 42 | 76.29.64.47 | 20155413323302204671... | Vuze 4.8.0.0 | 04/28/2013 12:22:04 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Cicero |
| 43 | 98.253.174.211 | 20155413323302204671... | Transmission 2.77 | 04/28/2013 12:00:23 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Schaumburg |
| 44 | 24.12.190.243 | 20155413323302204671... | Vuze 4.8.0.0 | 04/28/2013 12:51:05 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Evanston |
| 45 | 71.201.68.50 | 20155413323302204671... | Vuze 4.8.1.1 | 04/28/2013 06:19:22 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 46 | 74.29.16.46 | 20155413323302204671... | Transmission 2.21 | 04/28/2013 04:13:47 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Niles |
| 47 | 76.29.73.103 | 20155413323302204671... | BitTorrent 7.6.1 | 04/23/2013 02:34:01 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Cicero |
| 48 | 67.184.96.55 | 20155413323302204671... | uTorrent 3.2.3 | 04/23/2013 01:42:25 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Bloomingdale |
| 49 | 69.47.244.230 | 20155413323302204671... | BitTorrent 7.6.1 | 04/23/2013 01:14:13 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | WideOpenWest | Illinois | Chicago |
| 50 | 67.174.87.51 | 20155413323302204671... | uTorrent 3.3.0 | 04/23/2013 01:04:32 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Oswego |
| 51 | 68.222.41.10 | 20155413323302204671... | Transmission 2.73 | 04/27/2013 06:53:31 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 52 | 24.14.153.24 | 20155413323302204671... | uTorrent 3.3.0 | 04/27/2013 03:32:32 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Oak Park |
| 53 | 74.29.73.251 | 20155413323302204671... | Vuze 4.8.0.0 | 04/27/2013 01:29:54 AM | The Company You Keep (2011) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Cicero |
| 54 | 76.16.254.251 | 20155413323302204671... | Shareaza 2.6.0.0 | 04/26/2013 11:51:18 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 55 | 68.56.4.117 | 20155413323302204671... | uTorrent 3.3.0 | 04/24/2013 09:55:00 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 56 | 50.158.24.106 | 20155413323302204671... | uTorrent 3.3.0 | 04/24/2013 07:43:53 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Cicero |
| 57 | 50.184.107.163 | 20155413323302204671... | uTorrent 3.3.0 | 04/24/2013 07:42:02 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Bolingbrook |
| 58 | 71.194.208.168 | 20155413323302204671... | Vuze 4.8.1.2 | 04/24/2013 03:53:09 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Grayslake |
| 59 | 71.201.208.320 | 20155413323302204671... | uTorrent 3.3.1 (Beta) | 04/24/2013 01:02:19 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 60 | 98.227.195.192 | 20155413323302204671... | uTorrent 3.3.0 | 04/24/2013 12:13:47 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 61 | 67.161.113.201 | 20155413323302204671... | uTorrent 3.3.0 | 04/24/2013 08:34:21 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Crystal Lake |
| 62 | 98.253.1.35.9 | 20155413323302204671... | uTorrent 3.3.0 | 04/24/2013 07:10:23 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 63 | 76.16.19.163 | 20155413323302204671... | uTorrent 3.3.0 | 04/24/2013 06:22:59 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Plainfield |
| 64 | 50.151.135.71 | 20155413323302204671... | Transmission 2.77 | 04/24/2013 01:16:23 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Rockford |
| 65 | 67.173.113.140 | 20155413323302204671... | BitTorrent 7.7.0 | 04/24/2013 01:24:26 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Bloomingdale |
| 66 | 67.164.144.166 | 20155413323302204671... | BitTorrent 7.8.0 | 04/24/2013 02:18:23 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 67 | 67.166.110.35 | 20155413323302204671... | Vuze 4.9.0.0 | 04/24/2013 01:30:14 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Streamwood |
| 68 | 68.57.267.13 | 20155413323302204671... | uTorrent 3.2.3 | 04/26/2013 12:12:40 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 69 | 24.13.97.193 | 20155413323302204671... | Vuze 4.8.1.2 | 04/26/2013 12:18:23 AM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Chicago |
| 70 | 24.13.70.147 | 20155413323302204671... | Vuze 4.9.0.0 | 04/24/2013 11:22:19 PM | The Company You Keep (2012) | SHA1: 4D1F0DFEA9A466C8B4C0F5F3025393055BA466D1 | Comcast Cable | Illinois | Park Ridge |

| # | IP Address | Hash | Client | Date/Time | Title | SHA | ISP | State | City |
|---|---|---|---|---|---|---|---|---|---|
| 71 | 53.226.151.44 | 204343103131312DD04B286CA35F2ECDEF2FCA53DA | BitComet 1.32 | 04/25/2013 09:52:30 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Wood Oak |
| 72 | 53.213.176.53 | 204243103131312DC131CAA24F11E1F3CE77B437 | BitComet 1.34 | 04/25/2013 09:25:41 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 73 | 53.227.147.149 | 204134343130141D1F252325473443306A705269 | Vuze 4.3.0.4 | 04/25/2013 03:13:18 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Berwyn |
| 74 | 67.176.213.99 | 204134343130102D47626416E4736CA15EAS7A33 | Vuze 4.8.0.0 | 04/25/2013 02:51:09 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Oakdown |
| 75 | 53.213.125.51 | 204134343431311D2561A0733554314D6E706356 | Vuze 4.8.1.2 | 04/25/2013 12:15:18 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Oakdown |
| 76 | 24.14.85.204 | 2054525127373D25737271303S6A3A16F6C76446C | Transmission 2.77 | 04/24/2013 09:17:09 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Harwood Heights |
| 77 | 71.201.11.135 | 204134343130182031476A423S6E759047503534 | Vuze 4.8.0.0 | 04/24/2013 06:05:10 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Liberty/Co |
| 78 | 76.29.79.66 | 204134343530342D464677775744D764A455976 | Vuze 4.3.0.4 | 04/24/2013 05:49:20 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Cicero |
| 79 | 76.16.202.57 | 2D554D31353132D2568593ZBA4355F6B447D0157 | µTorrent Mac 1.6.5 | 04/24/2013 05:26:45 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Joliet |
| 80 | 53.212.27.56 | 2D554333353D5025D7193AF3E79CA803AC42C5 | µTorrent 3.3.0 | 04/24/2013 04:08:53 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Rockford |
| 81 | 53.212.27.49 | 2D5354353321332D20534F7618A20EF411C5FA366 | µTorrent 3.2.2 | 04/24/2013 01:59:15 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Rockford |
| 82 | 73.194.115.153 | 204134343130182D19706437476664E137654846D | Vuze 4.9.0.0 | 04/24/2013 12:57:29 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 83 | 24.13.213.1 | 2D5354331353D2D6473483369D9ED647972023ZD | µTorrent 3.3.0 | 04/24/2013 06:23:43 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 84 | 24.13.57.213 | 2D554333323D20252976E8A0CAA35FD91E2A4DACE | µTorrent 3.2.3 | 04/24/2013 05:04:58 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 85 | 53.223.148.63 | 2D5354D31353D300D7200134F3E9CF3E2AF99035 | µTorrent Mac 1.8.4 | 04/24/2013 04:19:00 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 86 | 50.131.122.214 | 204341303133134ED907CEA20D78CAEA6647393E3 | BitComet 1.34 | 04/24/2013 03:47:44 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 87 | 50.148.41.3 | 4203720462D3120D4B64A42E264DCE5BF850CC3 | BitTorrent 7.6.1 | 04/24/2013 03:36:27 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Machesney Park |
| 88 | 71.194.34.222 | 32313443123D3D2036F6F61320EF411C5FA346 | BitTorrent 7.8.0 | 04/24/2013 03:24:23 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Rogers/Co |
| 89 | 53.226.1.270 | 204134343130182031547449151A73443179 | Vuze 4.8.0.0 | 04/24/2013 01:53:41 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Country Club Hills |
| 90 | 67.176.253.64 | 2D554D3113343D2D06733323CE3DDC6D947490CE429 | µTorrent Mac 1.8.4 | 04/24/2013 02:54:03 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Aurora |
| 91 | 64.53.151.4 | 204D53132301D302D6847F7127057F14A61A873F7 | Aino 5.0.0.0 | 04/24/2013 01:09:23 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | WideOpenWest | Illinois | Chicago |
| 92 | 24.13.57.24 | 2D55343732323D30202190AA7391944035FCA47CE | µTorrent 3.2.3 | 04/23/2013 11:43:09 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 93 | 76.16.144.143 | 20424330113134D2D4575E3F60A744127062DA609 | BitComet 1.34 | 04/23/2013 10:55:54 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Orland Park |
| 94 | 24.1.8.132 | 204443130300300343472934A6A33A5167D4D | Deluge 2.0.0.0 | 04/23/2013 07:30:14 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Hinsdale |
| 95 | 53.213.248.123 | 4237201823D3D20D6370D44A1231405E25C270B6 | BitTorrent 7.8.0 | 04/23/2013 05:48:52 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Rockford |
| 96 | 71.201.19.357 | 2D55341332311352D366086631000001A329ECCCU78 | µTorrent 3.3.1 | 04/23/2013 04:03:00 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Downers Grove |
| 97 | 69.345.204.243 | 2D543132375F302D73414F3634496A6976497665 | Transmission 2.77 | 04/23/2013 01:45:29 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 98 | 24.13.148.229 | 204443137353301D6C215F3322D4D41743A287A | Deluge 1.3.5.0 | 04/23/2013 12:14:59 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Schaumburg |
| 99 | 71.57.85.154 | 2D5435312737301D76371161476816537371B6C33 | Transmission 2.77 | 04/23/2013 12:02:45 PM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Evanston |
| 100 | 71.57.50.20 | 204243613131312D1DCDF31CF32544CDCE4D602 | µTorrent 1.35 | 04/23/2013 10:34:19 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 101 | 24.240.56.233 | 2D5354331353D3D2007663CE3A41AADF73347ECD | µTorrent 3.3.0 | 04/23/2013 10:31:18 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Charter Communications | Illinois | Roscoe |
| 102 | 50.151.199.234 | 2D5354331323D3D2F5652633D2C78CCE2441A | µTorrent 3.3.0 | 04/23/2013 07:23:18 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Chicago |
| 103 | 71.201.54.135 | 2D554D313D34D2000F3F1D2517678DC7371B7A53 | µTorrent Mac 1.8.4 | 04/23/2013 02:12:52 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Dox |
| 104 | 53.213.130.13 | 204134343811312DC6443F474D7354119131454191 | Vuze 4.8.1.2 | 04/23/2013 01:37:19 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Rockford |
| 105 | 71.201.232.61 | 2D5354331353D30D7315695726850023756F053 | µTorrent 3.3.0 | 04/23/2013 01:26:53 AM | The Company You Keep (2012) | SHA1: 6D1FD6FEABA868CB84E3F5F3035893D5S8A66ED1 | Comcast Cable | Illinois | Berwyn |

Case: 1:13-cv-03833 Document #: 1-1 Filed: 05/23/13 Page 8 of 8 PageID #:17

| 106 | 64.53.161.120 | 2D5554333363027D4673330C11C0276311CCC96EC71 | μTorrent 3.3.0 | 04/13/2013 01:53:51 AM | The Company You Keep (2012) | SHA1: 601FD6FEA5A56CCB34CEF5F3025953D55BA65ED1 | WideOpenWest | Illinois | Calumet City |
| 107 | 67.167.244.30 | 4D37D304AD3D7D3D157256A77A3724852F8A8A23 | BitTorrent 7.4.0 | 04/13/2013 01:02:21 AM | The Company You Keep (2012) | SHA1: 601FD6FEA5A56CCB34CEF5F3025953D55BA65ED1 | Comcast Cable | Illinois | Glen Ellyn |
| 108 | 67.173.140.14 | 3D545322531130207316316C2E606C307674A133 | Transmission 2.51 | 04/13/2013 13:30:24 AM | The Company You Keep (2012) | SHA1: 601FD6FEA5A56CCB34CEF5F3025953D55BA65ED1 | Comcast Cable | Illinois | Elk Grove Village |
| 109 | 67.173.57.45 | 3D5554329221130201A625150F3CF2D16EF9AA8C | μTorrent 2.2.1 | 04/13/2013 13:11:46 AM | The Company You Keep (2012) | SHA1: 601FD6FEA5A56CCB34CEF5F3025953D55BA65ED1 | Comcast Cable | Illinois | Sterling |
| 110 | 50.140.185.206 | 3D5554329203020207461CE113X020235E37710938 | μTorrent 3.0.0 | 04/13/2013 12:01:47 AM | The Company You Keep (2012) | SHA1: 601FD6FEA5A56CCB34CEF5F3025953D55BA65ED1 | Comcast Cable | Illinois | Crystal Lake |
| 111 | 98.228.74.121 | 3D5554333363020204073173263138E46E7CD7E760 | μTorrent 3.3.0 | 04/13/2013 11:53:25 PM | The Company You Keep (2012) | SHA1: 601FD6FEA5A56CCB34CEF5F3025953D55BA65ED1 | Comcast Cable | Illinois | Chicago |
| 112 | 67.184.143.182 | 3D5554333213302D317D40A371E0994CA44F1AD0 | μTorrent 3.2.3 | 04/13/2013 11:44:23 PM | The Company You Keep (2012) | SHA1: 601FD6FEA5A56CCB34CEF5F3025953D55BA65ED1 | Comcast Cable | Illinois | Aurora |

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

        Plaintiff,                 CIVIL ACTION NO. 11-15232

                              DISTRICT JUDGE DENISE PAGE HOOD
        v.

                              MAGISTRATE JUDGE MARK A. RANDON
JOHN DOES 1-21,

        Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT JOHN DOE 18'S MOTION TO QUASH SUBPOENA AND TO DISMISS (DKT. NO. 6)

### I. INTRODUCTION

Patrick Collins, Inc. ("Plaintiff") is the registered copyright owner of the adult movie "Cuties 2" (the "Movie" or "Work"). Plaintiff brought suit against 21 John Doe Defendants (collectively, "Defendants") alleging direct and contributory copyright infringement of the Movie. Plaintiff claims that Defendants downloaded and uploaded the Movie via a peer-to-peer protocol, BitTorrent. On December 16, 2011, this Magistrate Judge granted Plaintiff's motion for leave to serve third party subpoenas on Defendants' Internet Service Providers ("ISPs") to obtain Defendants' names and residential addresses (Dkt. No. 5).[1]

John Doe 18 ("Doe 18") was among those Defendants whose names and addresses Plaintiff sought. Doe 18 moves to quash the subpoena served on his/her ISP and to dismiss Plaintiff's claims due to misjoinder (Dkt. No. 6). Judge Denise Page Hood referred the motion

---

[1] Currently, Defendants can only be identified by their Internet Protocol ("IP") addresses. "A party may not seek discovery from any source before the parties have conferred as required by rule 26(f), except . . . when authorized . . . by court order." Fed R. Civ. P. 26(d)(1).

1

to this Magistrate Judge for a report and recommendation (Dkt. No. 4). The issues have been fully briefed (Dkt. Nos. 6, 9); oral argument was held on March 8, 2012.

The facts of this case are complex and highly technical, involving concepts of computer science, networking, and other technology. Despite this complexity, the straightforward and well-established permissive joinder rule governs the outcome. Because this Magistrate Judge finds that joinder is proper, **IT IS RECOMMENDED** that Doe 18's motion to quash the subpoena and dismiss be **DENIED**.

## II. FACTUAL BACKGROUND

Before delving into the workings of BitTorrent,[2] a simplified overview of Plaintiff's claims may be helpful:

Plaintiff alleges that a specific individual received the Movie "Cuties 2," used a computer to break the Movie down into small pieces, and created a file that allowed the pieces of the Movie to be downloaded over the internet (Dkt. No. 1; Compl.). According to Plaintiff, each Defendant uploaded and downloaded pieces of the Movie through a series of transactions that can be traced back to this specific individual, known as the "Initial Seeder." Everyone who can be traced back to this Initial Seeder is part of a common group of users ("Swarm") downloading or uploading pieces of the Movie. BitTorrent is the protocol that allowed Defendants to engage in their allegedly related transactions. Plaintiff alleges that Defendants are part of the same Swarm, and this makes them ripe for Joinder under Federal Rule of Civil Procedure 20.

---

[2] This Spring, I had the good fortune to have an exceptionally bright law student, Matthew Crist, as an intern. Before attending law school Matt was a computer technician. His skill in explaining the technology to the technologically challenged and assistance with this report and recommendation were invaluable.

Plaintiff chose to sue 21 potential defendants in the Swarm.[3]  Besides being in the same Swarm and copying the Movie, Plaintiff alleges that Defendants reside in the Eastern District of Michigan (based on their IP addresses).[4]

**A. How BitTorrent Works: A Detailed Explanation**

For the technologically challenged, a working definition of a few recurring terms is useful to understand how BitTorrent operates:

<u>Glossary of Terms</u>

**Communication Protocol:** Procedures that enable devices within a computer network to exchange information.  Also known as a protocol.  *McGraw-Hill Dictionary of Scientific and Technical Terms* 440 (6th ed. 2003).

**Hash Identifier:**  A way to uniquely identify an encoded file.  There are many variations on this concept, however, it is simply a long string of letters and numbers that form a unique string.  It is practically impossible for two Hash Identifiers to be identical because of the extremely long string that is randomly generated for each piece when the Torrent is made.

**Hypertext Transfer Protocol (HTTP):**  Another system of communication standards.  HTTP is the protocol by which websites on the World Wide Web communicate with browsers; hence the HTTP before a website's address.

**File:** A collection of related records treated as a unit.  *McGraw-Hill Dictionary of Scientific and Technical Terms* 797 (6th ed. 2003).  A file can be a movie, a set of text, a picture, *et cetera*.  The computer science use of the term is analogous to the term "file" in common parlance.

**File Transfer Protocol (FTP):**  Another system of communication standards wherein a file is directly transferred from the server to the downloader.

**Internet Protocol (IP):**  The set of standards responsible for ensuring that data packets transmitted over the Internet are routed to their intended destinations.  *McGraw-Hill Dictionary of Scientific and Technical Terms* 1101 (6th ed. 2003).

---

[3] Plaintiff is not required to join all parties under the permissive joinder rule.  Nor may Defendants demand that Plaintiff join another potential defendant that is not a "necessary party." *See, Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980).

[4] The court must have personal jurisdiction and venue must be proper to consider the issue of joinder.  Plaintiff has satisfied these conditions.

**IP Address:** The numeric representation of a device on a network that communicates using Internet Protocol. The address is of the form "xxx.xxx.xxx.xxx."

**Leecher:** (1) A BitTorrent user who has not yet fully downloaded a file; (2) A user who has inhibited, or throttled, the upload speed setting in the Client Program so that it will download much more than upload; (3) A user who exits BitTorrent after the download is complete to prevent uploading to other peers.

**Piece:** An initial seeder breaks a file into pieces. The pieces are typically one-quarter megabyte in size; however, the last piece will be the size of the remainder. The Hash of the pieces is included in the Torrent file. At any given moment, a peer may be simultaneously uploading and downloading pieces from and to many different peers within the same swarm for the same Torrent. Bram Cohen, *Incentives Build Robustness in BitTorrent*, 1 (May 22, 2003), http://bittorrent.org/bittorentecon.pdf.

**Seeder:** A user who has downloaded the whole file and is uploading all of its pieces to other peers in the swarm. Cohen, *Incentives Build Robustness in BitTorrent, supra*.

**Seeder, Initial:** The individual who has taken a complete file (a movie, picture, program, or any other kind of computer file) broken it down into pieces, encoded it with Hashes, created the Torrent file with the data about that file and its tracker, and made the complete file available on BitTorrent.

When users begin downloading from this initial seeder, a swarm is created; each individual in the first stage of the swarm downloads the same file from the same initial seeder with the same Hashes and then the file spreads virally with that same digital fingerprint as torrent

**Swarm:** A group of users downloading the desired file from each other, from seeders (if any are online), and from the initial seeder (if still online). Additionally, a swarm denotes that all of the users in it are downloading files with the same Hash Identifier.

**Uniform Resource Locator (URL):** The unique Internet address assigned to a Web document or resource by which it can be accessed by all Web browsers. The first part of the address specifies the applicable Internet protocol, for example, http or ftp; the second part provides the IP address or domain name of the location. Abbreviated "URL." *McGraw-Hill Dictionary of Scientific and Technical Terms* 2225 (6th ed. 2003).

### 1. BitTorrent defined

BitTorrent is a protocol for distributing files. It identifies content by URL and is designed to integrate seamlessly with the web. Its advantage over plain HTTP is that when multiple downloads of the same file happen concurrently, the downloaders upload to each other, making it possible for the file source to support very large numbers of downloaders with only a modest increase in its load.

*See* Bram Cohen, *The BitTorrent Protocol Specification*, BitTorrent.org (Feb. 28, 2008),

http://www.bittorrent.org/beps/bep_0003.html. Users of the BitTorrent protocol download and

install the BitTorrent program ("Client Program" or "Client") onto their computers and then

search the internet for a unique ".torrent"[5] file ("Torrent"). *See* Cohen, *The BitTorrent Protocol*

*Specification, supra.* After downloading the relatively small Torrent, the Torrent directs the

Client Program to the location and identity of the pieces of the desired file (or Work) by way of a

tracker. Cohen, *The BitTorrent Protocol Specification, supra; e.g.,* Cohen, *Incentives Build*

*Robustness in BitTorrent, supra.* The Client Program then downloads the pieces of the file from

other BitTorrent users and stores them locally on the user's computer. *See* Cohen, *Incentives*

*Build Robustness in BitTorrent, supra.*

### 2. The Torrent File

The Torrent file is the hub of the BitTorrent system. The Torrent file is created by the

initial seeder. *See* Cohen, *The BitTorrent Protocol Specification, supra.* The Torrent file

contains: the URL of the tracker, information about the file that has been broken down into

pieces, the number and size of the pieces, and the SHA1 hashes ("Hash Identifier") unique to

each initial seeder's Torrent file. Cohen, *The BitTorrent Protocol Specification, supra.* When

the initial seeder breaks the file (here, the copyrighted Movie) into pieces, each piece gets

encoded using a Hash Identifier. Cohen, *The BitTorrent Protocol Specification, supra.* After a

user has downloaded all of the pieces of the desired file from peers, the file will be reconstituted

---

[5] To be explained in more detail below.

into a complete copy of the original file and will be usable just as the original. As a movie, it will then be viewable.

### 3. The Hash Identifier

The Unique Hash Identifier (also known as a hash tag, SHA1 hash, or a digital fingerprint) is a long string of letters and numbers[6] that is used to compare a copy of a file with the original to ensure data integrity. In the context of BitTorrent, the Hash Identifier is randomly generated and assigned to each piece of a file when the initial seeder creates the Torrent file. This Torrent is then downloaded by users who wish to obtain the work that the initial seeder has made available. Before two peers can transact a piece of the Work, BitTorrent compares the Hash of each user. If the Hash Identifiers are not identical, the connection between peers is severed and no transaction takes place. Cohen, *The BitTorrent Protocol Specification, supra*.

### 4. The Peers

Users who download and open the same Torrent file are coordinated by the tracker. Cohen, *Incentives Build Robustness in BitTorrent, supra*. Unless the user affirmatively inhibits uploading, the Client Program will announce and automatically upload each piece to other peers who have used the same Torrent. Cohen, *Incentives Build Robustness in BitTorrent, supra*. If the user has downloaded all of the pieces, he will automatically become a seeder and will automatically upload the file to all peers in the swarm as they request pieces.[7] This coordination through the Torrent file is key to the success of a swarm, because each individual user's success or failure to fully download the file is dependent on other users downloading the same Torrent

---

[6] Plaintiff alleges that each Defendant downloaded a piece of the Movie with the exact same Hash Identifier: EE7B1E84B6FD741359D99A0397DF043842BAB4D7. (Dkt. No. 1 at 9).

[7] The desire of the creator of BitTorrent is that users become seeders instead of inhibiting the upload of pieces to other users (leeching); thus, the default setting is that each user automatically uploads each piece to other peers at all times until the user affirmatively chooses to disable uploading, exits the program or deletes the Torrent. *See* Cohen, *Incentives Build Robustness in BitTorrent, supra*. The fact that Plaintiff's investigator was able to download a piece from each Defendant means that they did not inhibit uploading.

file and allowing the upload of pieces. *See* Cohen, *Incentives Build Robustness in BitTorrent, supra*; *see e.g.*, Cohen, *The BitTorrent Protocol Specification, supra*.

### III. FACTUAL ANALYSIS

**A. Steps Taken By Plaintiff's Investigator**

Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8-10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie -- traceable via Hash Identifier to the same Initial Seeder -- on his or her computer and allowed other peers to download pieces of the Movie.

By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash;[8] otherwise, the download would not have occurred.

If Plaintiff's allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:

1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder**; or

2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or

3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or

---

[8] The Hash value of EE7B1E84B6FD741359D99A0397DF043842BAB4D7. (Dkt. No. 1 at 9).

4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.

In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

## IV. LEGAL ANALYSIS

At the outset, it should be noted that Doe 18's "motion to quash subpoena and dismiss," must be construed as a motion to quash and motion *to sever*. Severance – not dismissal – is the correct remedy of misjoinder. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party"); *see also, Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 342 (D.D.C. 2011) (clarifying that while misjoinder is not fully defined, if it is found, severance is the correct remedy); *Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 12 (D.D.C. 2004) (stating that if the preconditions of Rule 20(a) are not satisfied, then the misjoined parties are to be severed into discrete actions);

*e.g.*, *Donkeyball Movie, LLC., Does 1-171*, 810 F.Supp.2d 20, 27 n.6 (D.D.C. 2011); *Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d 1150, 1165 (N.D. Ca. 2011).[9]

### A. Permissive Joinder

Federal Rule of Civil Procedure 20(a)(2) allows the joinder of defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) lists three categories of rights to relief and supplies two preconditions to joinder. To satisfy Rule 20(a)(2), a plaintiff must assert a right to relief against a group of defendants jointly, severally, or in the alternative.[10] The preconditions are: 1) the right to relief must be with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and 2) at least one question of law or fact must be common to all defendants.

Rule 20 should be viewed in light of the overarching policy of Rule 1 which requires that the rules "be construed and administered to secure the *just, speedy, and inexpensive* determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). "The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. Single trials generally tend to lessen the delay, expense and inconvenience to all concerned." *Mosley v. General Motors Co.*, 497 F.2d 1330,

---

[9] If the Plaintiff is required to proceed against each of the 21 defendants separately, then the court would have to create 21 dockets and schedule 21 pre-trial conferences. After all that, the court may very well consolidate the 21 actions under Fed. R. Civ. P. 42; meanwhile, the Plaintiff and the court would have expended a great deal of time and money.

[10] A right to relief against defendants jointly requires concerted action by two or more parties. A right to relief severally against defendants means that each right to relief is separate and distinct from defendant to defendant and no interaction among the defendants is required. An 'alternative' right to relief may be asserted when plaintiff knows one of the defendants is liable, but does not know which one. 4 Moore's Federal Practice § 20.03. Plaintiff asserts a right to relief against Defendants jointly and a right to relief severally; however, a right to relief against the Defendants severally alone is sufficient to satisfy the first clause of Rule 20.

1332 (8th Cir. 1974) (citation omitted). Accordingly, the Supreme Court emphasized that, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (internal footnote omitted).

"In order to satisfy the first prong of [Rule 20], the claims must be logically related." *Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 10 (D.D.C. 2004) (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926)). "The logical relationship test is flexible." *Disparte*, 223 F.R.D. at 10.

Furthermore, permissive joinder is to be liberally construed. *See Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). Applying this liberal construction standard in *United States v. Mississippi*, 380 U.S. 128, 142, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965), the Supreme Court found that allegations of a state-wide system designed to enforce the voter registration laws in a way that would inevitably deprive African-Americans of the right to vote solely because of their color, justified the joinder of registrars of six counties as defendants. The Supreme Court reversed a district court's decision which held that, "the complaint improperly attempted to hold the six county registrars jointly liable for what amounted to nothing more than individual torts committed by them separately with reference to separate applicants." *Mississippi*, 380 U.S. at 142. Although the district court's decision amounted to a finding of a lack of concerted action by the six registrars – who were from different geographical areas, acted independently of each other, and perhaps had never met one another – the Supreme Court interpreted Rule 20 to encompass a right to relief severally so long as transactional relatedness and commonality in fact or law are met. *Mississippi*, 380 U.S. at 142-43.

The permissive joinder of defendants is also encouraged for purposes of judicial efficiency. *See United Mine Workers of America,* 383 U.S. 715 at 724; *Disparte v. Corporate Executive Board,* 223 F.R.D. 7, 10 (D.D.C. 2004); *Donkeyball Movie, LLC., v. Does 1-171,* 810 F.Supp.2d 20, 26 n.6 (D.D.C. 2011); *but cf Hard Drive Productions v. Does 1-188,* 809 F.Supp.2d 1150, 1165 (N.D. Cal. 2011) (holding that filing 188 individual actions does not hinder plaintiff's ability to protect its copyright and that fairness to the defendants is more persuasive than judicial economy and fairness to the plaintiff).

### 1. Meaning of transaction

The Eighth Circuit clarified the meaning of the word "transaction" for purposes of Rule 20. *Mosley v. General Motors Co.,* 497 F.2d 1330, 1333 (8th Cir. 1974). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Mosley v. General Motors Co.,* 497 F.2d 1330, 1333 (8th Cir. 1974) (citing *Moore v. New York Cotton Exchange,* 270 U.S. 593 46 S.Ct. 367 (1926)). Therefore, "Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. *Absolute identity of all events is unnecessary.*" *Mosley,* 497 F.2d 1333 (emphasis added).

### B. Joinder Is Proper

Applying the legal standards discussed above, joinder of Defendants is proper. Plaintiff alleges a right to relief severally against Defendants for direct and contributory copyright infringement of the Work; Plaintiff says that Defendants networked with other each other and/or with other peers through a series of transactions in the same swarm to infringe on Plaintiff's copyright. Stated simply:

> [I]t is difficult to see how the sharing and downloading activity alleged in the Complaint – a series of individuals connecting either directly with each other or

as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file – could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).

*Digital Sin, Inc. v. Does 1-176*, 12-CV-00126 AJN, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012) (emphasis in original) (holding that 176 defendants were properly joined); *see also, OpenMind Solutions, Inc. v. Does 1-39*, C 11-3311 MEJ, 2011 WL 4715200 (N.D. Cal. Oct. 7, 2011) (holding the joinder of 39 defendants proper in a case with facts nearly identical to these), *and Hard Drive Productions, Inc. v. Does 1-55*, 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) (holding that joinder of 55 defendants at a similarly early stage of litigation was proper; but requiring plaintiff to amend its complaint for other reasons).

## C. Contrary Cases

Courts are divided over whether joinder is proper in cases involving BitTorrent defendants. Many cases agree with the result recommended by this Magistrate Judge. *See, e.g., Digital Sin, Inc. v. Does 1-176*, 12-CV-00126 AJN, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012); *Donkeyball Movie, LLC., v. Does 1-171*, 810 F.Supp.2d 20 (D.D.C. 2011); *Hard Drive Productions, Inc. v. Does 1-55*, 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011); *First Time Videos, LLC., v. Does 1-76*, 276 F.R.D. 254, 258 (N.D. Ill. 2011); *Nu Image, Inc. v. Does 1-3,932*, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fl. Feb. 28, 2012). In several earlier cases, courts grappled with other peer-to-peer protocols[11] that are functionally distinct from the BitTorrent protocol. Additionally, several other courts have found joinder improper due to a lack of a concert of action. But, a concert of action is not required since Plaintiff alleges a right to relief severally against Defendants. Alleging a right to "several" relief is a proper route to joinder. Fed. R. Civ. P. 20(a)(2)(A).

---

[11] Such as Gnutella, Grokster, and Napster.

Cases reaching the opposite result are also factually or legally distinguishable. For example, the United States District Court for the District of Arizona recently held that joinder of 131 defendants was improper. *See Third Degree Films, Inc. v. Does 1-131*, 12-108-PHX-JAT, 2012 WL 692993 (D. Ariz. Mar. 1, 2012). In its discussion, the court said, "because pieces and copies of the protected work many [sic] be coming from various sources within the swarm, individual users might never use the same sources." *Third Degree Films*, 2012 WL 692993 *5. While this may be true, the reasoning avoids the relationship (traceable back to a specific initial seed through a series of transactions) that must exist between all users in the same Swarm. The *Third Degree Films* court also stated that, "[the swarm] can last for many months. During those months, the initial participants may never overlap with later participants." *Third Degree Films*, 2012 WL 692993 *5. However, the law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm.[12]

Several district courts in the Northern District of California have also considered cases against BitTorrent users, and have found joinder of large numbers of "Doe" defendants to be improper. In *Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d 1150 (N.D. Cal. 2011), the court found that joinder of 188 BitTorrent users was improper. The court examined several older cases that addressed the issue of joinder with other methods of file transfer and appeared to be persuaded by similar arguments that there is a lack of concert of action by BitTorrent users and therefore joinder was not proper. *See Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d at 1163. As discussed, concert of action, *i.e.*, a right to relief jointly, is not a precondition of joinder. Plaintiff asserts a right to relief jointly against Defendants *and* severally (Dkt. No. 1 at

---

[12] *See supra* discussion of *Mosley*, 497 F.2d 1333.

3). Therefore, the first clause of Rule 20(a)(2)(A) is satisfied by the assertion of a right severally.

The *Hard Drive Productions* court also reasoned that the various defenses may serve to demonstrate that joinder is improper. *See Hard Drive Productions*, 809 F.Supp.2d 1150 at 1164. However, "[t]he second prong of Rule 20(a) requires only that there be some common question of law or fact . . . not that all legal and factual issues be common to all [defendants]." *Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 11 (D.D.C. 2004). The court in *Hard Drive Productions* decided that a plaintiff must show that the defendants were in the same swarm at the same time. *Hard Drive Productions*, 809 F.Supp.2d at 1164. This requirement, however, overlooks the thrust of the allegation that Defendants were part of the same swarm. That Defendants were all part of the same swarm demonstrates that they downloaded the Movie through a series of uploads and downloads from the same initial seeder. The *Hard Driver Productions* court also said,

> In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols, merely infringing the same copyrighted work over this period is not enough.

*Hard Drive Productions*, 809 F.Supp.2d at 1163.

But, it is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded

the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

Another contrary decision is found in *SBO Pictures, Inc. v. Does 1-3,036*, 11-4220 SC, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011). The *SBO Pictures* court determined that joinder of 3,036 defendants was improper, severed 3,035 defendants, and then maintained the action against defendant Doe 1. *Id.* The *SBO Pictures* opinion reads the term "closely" into Rule 20 and thus holds that Rule 20 requires "a series of closely related transactions." *Compare SBO Pictures, Inc. v. Does 1-3,036*, 11-4220 SC, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011), *with United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); and *Pasha v. Jones*, 82 F.3d 418 (6th Cir. 1996) ("[claims may be joined if] they assert any right to relief relating to or arising out of the same transaction or . . . series of transactions . . . . Joinder is encouraged because it avoids multiple lawsuits involving similar or identical issues"), *and Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 10 (D.D.C. 2004) ("[i]n order to satisfy [transactional relatedness] the claims must be logically related. . . . The logical relationship test is flexible"). There is no basis to conclude that an additional requirement of "closely related transactions" is contemplated by Rule 20, and to so conclude topples the plain reading of Rule's allowance of "a series of transactions."

Finally, in a case involving the same Plaintiff as this case, a recent Eastern District of Michigan decision found that joinder of 23 BitTorrent defendants was improper. *See Patrick Collins, Inc. v. John Does 1-23*, 11-CV-15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012). The court in that case found that -- for joinder purposes -- BitTorrent was indistinguishable from prior methods of internet file sharing, and then followed a line of cases holding that joinder was

improper in the context of those other methods of file sharing. This Magistrate Judge respectfully disagrees with that conclusion, and instead finds that the technology underlying BitTorrent does make it different from other file sharing methods, for joinder purposes. Joinder is proper in this case.

Since joinder is proper, the motion to sever must be denied. The motion to quash must also be denied; as a proper party, Doe 18 has no basis to quash the subpoena. Fed.R.Civ.P. 45(c)(3).

## V. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Doe 18's motion to quash subpoena and dismiss this case be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.

<div style="text-align:right">

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

</div>

Dated:  April 5, 2012

<div style="text-align:center">

*Certificate of Service*

</div>

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, April 5, 2012, electronically.*

<div style="text-align:right">

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*

</div>